Telia U. Williams, Esq.
LAW OFFICE OF TELIA U. WILLIAMS
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
702-835-6866
teliauwilliams@telialaw.com
*Attorney for plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CLYDE MATT, an Individual; DONALD PARKER, an Individual; PHILLIP HENKLE, an Individual; ESTRELLA CARINO, an Individual,<br><br>           Plaintiffs,<br><br>           vs.<br><br>DARYL DESHAW,  an individual,<br><br>           Defendant,<br><br> -and-<br><br>IMT GROUP, LLC, a Nevada limited liability company,<br><br>           Nominal Defendant. | Civil Action No.:<br><br><br>**VERIFIED COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

Plaintiffs Clyde Matt, Donald Parker, Phillip Henkle, and Estrella Carino, individual members, and together, the majority, of the Nevada limited liability company, IMT Group, LLC, hereby allege and complain, upon personal knowledge as to themselves and their own acts, and upon information and belief, as to all other matters, as follows:

## I.   INTRODUCTION AND SUMMARY

1.  This is both a direct and derivative action against, respectively, Daryl DeShaw, and

IMT Group, LLC.  IMT is a nominal defendant.

2. This is also a case involving RICO against Daryl DeShaw.

3. Plaintiffs, who together constitute the majority membership of IMT Group, LLC, ("IMT" or "the company"), allege and seek relief for damages, on their own behalf, for harm sustained, and/or to be sustained, against Daryl DeShaw ("DeShaw") for violations of federal law, as well as state law, including breaches of fiduciary duty.

4. Additionally, plaintiffs derivatively allege and seek relief for damages to the company, for violations of state and federal law against DeShaw on behalf of nominal defendant, IMT.

5. DeShaw, the company's apparently self-appointed Chief Operations Officer, has engaged in certain illicit, unauthorized transactions that has put in jeopardy the professional licenses of the plaintiffs, as well as their financial well-being, good will and reputations; has wrongfully refused to provide information requested by plaintiffs, to which they are entitled; has converted over a hundred thousand of dollars in company funds, as well as and the company's clients' and/or agents' funds, among other things; has acted in bad faith by refusing to return property belonging to the plaintiffs, and by harassing, and threatening plaintiffs; and by committing fraud, among other things, which has also harmed the company's and the plaintiffs' image, reputation, and goodwill.

6. DeShaw has further harmed the company by conspiring with the company's legal counsel to withhold payments to an agent of the company, and in suborning the company's legal counsel to act in DeShaw's, rather than the company's behalf.

7. DeShaw has failed to take steps to correct these failings and misconduct despite having

been given time and opportunity to do so, and it has become necessary for the plaintiffs, both on behalf of themselves, and the company, to file this lawsuit and to seek injunctive and declarative relief.

8.  Plaintiffs also seek compensatory and punitive damages as, among other things, defendant's conduct has unjustly enriched DeShaw and has exposed the company and the plaintiffs to great expense and liability, and caused and/or allowed the company and the plaintiffs to suffer potentially hundreds of thousands of dollars in harm.

9.  The unlawful conduct complained of occurred while defendant was directing, controlling, and/or advising the company.  DeShaw authorized or failed to halt the unlawful conduct complained of herein in dereliction of his fiduciary duties to the plaintiffs, the company, and third-parties.

## II.   JURISDICTION, VENUE, AND PARTIES

10. Plaintiff Clyde Matt ("Matt") is an individual and a resident of Nevada.

11. Plaintiff Donald Parker ("Parker") is an individual and a resident of Nevada.

12. Plaintiff Phillip Henkle ("Henkle") is an individual and a resident of Nevada.

13.  Plaintiff Estrella Carino ("Carino") is an individual and a resident of Nevada.

14. Defendant Daryl DeShaw ("DeShaw") is an individual and a resident of Nevada.

15. Nominal Defendant IMT Group, LLC ("IMT") is a Nevada limited liability company.

16. At the time of the actions alleged in this Complaint, DeShaw was acting within the course and scope of his agency, partnership, joint venture, corporate office, and/or employment status.

17. This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. sec. 1964, and supplemental jurisdiction exists for the state law claims pursuant to 28

U.S.C. sec. 1367.

18. Declaratory relief is available pursuant to 28 U.S.C. secs. 2201 and 2202.

19. Venue in this District is proper pursuant to 18 U.S.C. sec. 1965 and 28 U.S.C. sec. 1391 because defendants are subject to personal jurisdiction in this judicial district and reside and/or transact business here and the conduct complained of occurred here.

20. This court may acquire personal jurisdiction over defendants, which are all present in Clark County, Nevada, and/or do regularly do business in Clark County, Nevada.

21. Venue is proper in this court as all of the events complained of occurred in Nevada, or have their nexus in Nevada.

### III. FACTUAL ALLEGATIONS COMMON TO ALL CLAIMANTS AND CAUSES OF ACTION

22. Matt, Parker, Henkle, and Carino, (collectively, "plaintiffs" or "the majority"), along with DeShaw, are all members of IMT, a limited liability corporation.

23. At some point during the last two years, the majority and DeShaw agreed to form IMT, a limited liability company in order to manage and sell real estate in Clark County, Nevada.

24. IMT also brokers and sells real estate, among other related services.

25. Plaintiffs Matt and Parker are licensed brokers of real estate; plaintiffs Parker and Carino are licensed property managers.

26. IMT accepts monthly rental payments and security deposits from tenants on behalf of landlords who are clients of IMT.

27. IMT forwards the monthly tenant rental payments and security deposits to its client landlords, retaining a certain agreed-upon commission.

28. Upon information and belief, DeShaw is neither a licensed real estate broker, nor a licensed property manager.

29. DeShaw cannot, without the authorization and supervision of his aforementioned partners, independently engage in any of the core business activities of the company.

30. Prior to forming IMT, the majority were owners of a company known as WC Realty.

31. One of the owners and brokers of WC Realty was one William Chen, who, in or near January or February 2014, stole rent monies from landlords, and when discovered and prosecuted by the Clark County District Attorney, disappeared.

32. Desiring to distance themselves from Mr. Chen, and needing to form a new company with a different real estate broker, the majority decided to form a different company, and asked DeShaw to join them and assist them in managing the company and forming the LLC.  That limited liability company was IMT.

33. Plaintiffs Matt, Parker, Henkle, Carino, and defendant DeShaw, are equal members and owners of IMT.

34. However, DeShaw unilaterally took control over the rental payment accounts, computer access and payment link accounts, as well as all of the other important financial accounting information and technology support.

35. The parties desired to execute an Operating Agreement in order to formalize and memorialize the terms of their business relationship as members and owners of IMT.

36. On or near April 21, 2014, DeShaw emailed to the majority a proposed Operating Agreement.

37. This Operating Agreement, ("the original Operating Agreement"), was acceptable to the majority.

38. On or near May 27, 2014, DeShaw forwarded to the majority, a signature page to sign to the earlier proposed Operating Agreement.

39. Thereafter, DeShaw sent a copy of a different Operating Agreement with the majority's signatures attached.

40. This second Operating Agreement ("the second Operating Agreement") was different in several material respects than the one that DeShaw initially proposed in the original Operating Agreement.

41. Among other things, the second Operating Agreement officially named DeShaw as "Chief Operating Officer" without a vote or agreement by the majority.

42. The second Operating Agreement called for a ninety-percent (90%) majority to enact any action for IMT, rather than a simple majority, as was the case in the original Operating Agreement which the majority intended to sign.

43. This second Operating Agreement, which was not presented to the majority prior to DeShaw's fraudulently affixing their signatures to it, does not at all reflect either the written and/or verbal agreement between and among them.

44. None of the majority would have agreed to sign the second Operating Agreement had it been presented to them.

45. DeShaw appointed himself Chief Operating Officer (COO) without the majority's knowledge or consent.  The majority neither approved, nor ratified, his action in so doing.

46. As self-appointed COO, DeShaw unilaterally amassed a tremendous amount of power, including overseeing all of the fiscal accounting of the company as well as its day-to-day operations.

47. DeShaw aggregated to himself the duty and responsibility of collecting rental payments from tenants and placing these payments, without authorization of his partners, in various bank accounts.

48. DeShaw maintains, and/or has maintained separate bank accounts where he deposits his illicit gain from client accounts.

49. Some of these bank accounts were unknown to the partners, and over which the partners did not have control, or to which they had no access.

50. Upon information and belief, in some cases, DeShaw converted some or all of these funds, denying his partners their fair share of the commission on these funds, arrogating to himself the full share.

51. In addition, more recently, DeShaw has retained all of the funds from tenants to himself, refusing to forward to IMT's clients (landlords) the money due to them from their tenants.

52. DeShaw has also failed to pay real estate agents who work for IMT their duly-earned commissions, converting them for his own use.

53. Such conduct on the part of DeShaw has exposed the company, and the majority, to liability, as well as loss of good will.

54. DeShaw has maintained a computer in the company's office as well as, upon information and belief, in his home that he inputs financial and accounting information unbeknownst to the other members.

55. DeShaw has not made this computer's access codes, internal hard drives, or other schemes accessible or even known to the majority.

56. DeShaw maintained locked drawers, receptacles, and even rooms away from the

contact and access by the other members.

57. DeShaw's undertook secret surveillance of members and others in the company's office, setting up hidden cameras and, upon information and belief, tape recording equipment, in the office.  Upon information and belief, at various times DeShaw secretly recorded telephone conversations, breaching the privacy of the majority, as well as third parties.

58. DeShaw has hidden from the majority the protocol he follows or followed in accepting payments from landlords and/or other parties, how he disburses or disbursed payments, if any, and how and when he makes or made deposits into the Company's accounts.

59. DeShaw has provided no transparency on these aspects of his financial management to the other partners at all.

60. The majority does not know how much money has come and gone from the various company bank accounts, trust accounts, and/or escrow accounts.

61. On or near August 1, 2014, one of the company's real estate agents sent a letter, by way of her counsel, to DeShaw and one of the majority, complaining that she had not received her commission to which she was entitled.

62. It was solely due to DeShaw's, in concert with the company's counsel (not a party to this action), conduct that resulted in the failure of the company to pay the real estate agent.  DeShaw confiscated the funds due the real estate agent and secured them in an account to which the rest of the majority does not have access.

63. Despite the request by the real estate agent to release her commission, DeShaw refused to do so.

64. Thereafter, the majority, and/or some members of the company, inquired into the company's bank accounts and found that some reflected, unjustifiably, a "zero" balance.  The majority estimated that over a hundred thousand of dollars went unaccounted for in these accounts, and had been converted by DeShaw.

65. The majority looked at another bank account of the company's and discovered that its balance was approximately two hundred dollars ($200.00).  Again, this was substantially below what the majority estimated should have been in the account. Again, the majority reasonably surmised that DeShaw converted the funds.

66. On or near August 26, 2014, the majority sent DeShaw a demand letter demanding that he take appropriate action to immediately redress the breaches of his fiduciary duty, negligence, gross negligence, recklessness, fraud, constructive fraud, conversion, and waste of company assets for which he is directly responsible.

67. The majority informed DeShaw that they would henceforward take responsibility, to the extent that they were and/or are able, to pay and/or otherwise deal with clients and third parties, including agents and landlords.

68. DeShaw did not provide the accounting that the majority demanded and gave him time to provide.

69. When DeShaw not only disregarded the majority's demand letter, but also further converted company assets and contacting clients for payment despite not having authorization, or a license to do so, particularly as the majority, which possesses the licenses, the majority separated from DeShaw.

70. In so doing, DeShaw also diverted funds from the majority, unilaterally changed the address and/or location of the company, and falsely represented to clients that he was

and/or is the "president" of the company, and possessed authorization to collect rents.

71. DeShaw, upon information and belief, continues to accept rental payments from tenants in derogation of the law and the accepted practice of the industry, as well as his fiduciary duty.

72. The majority confiscated the computer that DeShaw used in the office in order to ascertain what account information was listed in order to attempt to stop DeShaw from his conversion against the majority, as well as to investigate DeShaw's failure to pay the real estate agent, among other things.

73. DeShaw retaliated by hacking into one of the majority's personal email account and, upon information and belief, reviewed the member's messages without authorization.

74. In addition, upon information and belief, DeShaw forwarded a message from counsel for the majority to a third party, David LeGrand, counsel for the company, (which DeShaw has treated as his own personal counsel), without authorization or disclosure.

75. The majority went to the Real Estate Division, a division of the Department of Business and Industry in Nevada, ("RED") to report DeShaw's activities, particularly of operating as a property manager and/or real estate broker without a license, and without being associated with someone possessing a license.

76. RED confirmed that DeShaw was without authority to operate without a license, in the absence of the majority, which explicitly refused to, or to continue to, offer their license in association with him, or to confer authority on him to act without their

approval.

77. RED also confirmed that DeShaw was without authority to keep in his personal possession and/or control the hard copy files (and/or in other formats) of clients for which a license was needed to operate.

78. The majority, by way of their counsel, sent DeShaw an email informing him of the same. The majority demanded that DeShaw immediately cease and desist from contacting and/or working with clients as he did not have a proper license to do so, and could cause liability on the company.

79. DeShaw disregarded the email, and instead attacked the majority with verbal threats and offensive language by way of telephone calls and text messages. DeShaw also insulted the counsel for the majority, making thinly veiled racist remarks.

80. DeShaw did not agree to cease the illegal and/or illicit activities he engaged in with the company's clients and instead, appears to have increased them.

81. DeShaw not only absconded with the files of the clients, and moved offices without authorization, he threatened to call the police on the majority if they took any steps to investigate and/or stop his activities, and remained defiant in his illicit and/or illegal behavior.

82. Among DeShaw's illicit and/or illegal behavior was taking, without permission, the bank signature stamp of plaintiff, Donald Parker. Upon information and belief, DeShaw has continued to use this bank stamp to forge Parker's signature without his permission or authorization, both to the company's, and the majority's detriment.

83. Upon information and belief, DeShaw contacted the tenants, landlords, and/or other clients of the company and lied to them that "he" was in charge, and that they should

pay him rather than the majority, which were the only ones who legally could accept funds from the same.

84. DeShaw refused to forward the mail and other correspondence due to the company, and to which the majority was entitled, or inform them of the substance of the same.

85. At some point thereafter—the majority is not sure when—DeShaw apparently, unilaterally had the company dissolved with the Secretary of State without notice or approval by the majority.

86. The majority tried to do their best to intercept DeShaw's false representations to the company's clients but were only partly successful.  An indeterminate number of clients appear to remain under the false impression that DeShaw is operating IMT by himself and can legally or licitly accept their payments.

87. Further, upon information and belief, DeShaw continues to operate trust and commission accounts over which he should have no oversight or control, inasmuch as he is not licensed or bonded.

88. Upon information and belief, DeShaw has written misleading and/or deceptive communications to clients and/or other third parties with the purpose of inducing them to give him funds that properly belong to the company and/or the majority.

89. Upon information and belief, DeShaw also maintains a post office box where he collects payments that he solicits from company clients.

90. DeShaw has hurt the business reputation and goodwill of the company, and thrown its clients into complete chaos and confusion, in addition to defrauding both clients and the members of the company of profits.

91. Furthermore, DeShaw has unfairly capitalized on the name and goodwill of the

company, to its and the majority members' detriment.

## I.

## FIRST CAUSE OF ACTION

### (18 U.S.C. §§19—Civil RICO and NRS 207.470)

92. The foregoing allegations in the preceding paragraphs are repeated and incorporated as if fully set forth herein.

93. Mail and wire fraud is any fraudulent scheme to intentionally deprive another of property or legitimate services.

94. DeShaw has fraudulently obtained money and wired or deposited it into bank accounts controlled by himself. DeShaw has also collected monies from clients (particularly tenants) where he was and/or is not authorized, defrauding both the landlords who are clients, and the innocent third-party tenants.

95. DeShaw has also made false assertions to clients of the majority by way of mail.

96. In addition, upon information and belief, the plaintiffs have a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 781) or that is required to file reports under 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 780(d)).

97. DeShaw has fraudulently filed, or caused to be filed, false information on shareholder information and/or other securities reports of import to the SEC.

98. Consequently, DeShaw violated a predicate racketeering act.

99. The majority has suffered injury in their business and/or property by reason of DeShaw's violation of the predicate racketeering act and/or acts.

100.    DeShaw's violation proximately caused the majority's injury.

101.    The majority did not participate in the racketeering violations.

102.    Therefore, the majority is entitled to damages under either the federal statute

and/or state statute, and may recover up to three times actual damages sustained.

## SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty)

103.    The foregoing allegations in the preceding paragraphs are repeated and

incorporated as if fully set forth herein.

104.    DeShaw owes and/or owed a fiduciary duty to the plaintiffs as their business

partner.

105.    DeShaw has breached, and/or continues to breach that duty in significant ways.

106.    DeShaw's clandestine and despotic control of the accounting of the company,

including information regarding its clients and payments, breached his fiduciary duty

to his partners, the majority.

107.    By deceiving his fellow partners, and substituting another Operating Agreement

for the one that they signed, DeShaw has breached his fiduciary duty to the

plaintiffs.

108.    Had the plaintiffs known DeShaw's intentions, they would not have signed the

original Operating Agreement, for which DeShaw solicited their signatures in order

to substitute them on the second, unauthorized Operating Agreement.

109.    DeShaw knew that none of his partners would have agreed to sign the Operating

Agreement had they known.  That is the reason that DeShaw employed deception to

trick them into doing so.

110.    By not disclosing, and covertly altering the Operating Agreement (creating the second Operating Agreement) *after* having procured the other members' signatures, without the knowledge or consent of the other members, is a serious breach of fiduciary duty.

111.    DeShaw's appointing himself COO without the majority's knowledge or consent, also breached his fiduciary duty to his fellow members.

112.    DeShaw's aggrandizement of power, and conversion of company and other members' funds, also constitute a breach of fiduciary duty.

113.    DeShaw's deliberate secrecy regarding the financial activities he forcibly and/or clandestinely took over from his fellow members, constitute a breach of his fiduciary duty.

114.    DeShaw's conversion of the funds that should have been shared by his fellow members constitutes a breach of fiduciary duty.

115.    DeShaw's refusal to disclose to his fellow members the passwords, codes, accounting information of the computers on which he has maintained client accounts, despite their desire and request to know, also constitutes a breach of his fiduciary duty.

116.    DeShaw's refusal to turn over information about financial accounts, client accounts, or how much money he has accepted or received from transactions involving the business breaches his fiduciary duty.

117.    DeShaw's collecting from tenants after the majority disassociated their respective licenses from him, constitutes, upon information and belief, a criminal misdemeanor, and also breaches his fiduciary duty.

118.   DeShaw's secret surveillance of members and others in the company's office, along with being a Class D felony under Nevada law, also constitutes a breach of fiduciary duty.

119.   DeShaw's aggressive and deliberate lack of transparency on these aspects of his financial management to the other partners at all.

120.   The majority does not know how much money has come and gone from the various company bank accounts, commission, trust, and/or escrow accounts.

121.   Upon good information and belief, the majority has learned that DeShaw has not paid out the commission of at least one real estate agent to which the company was compelled to pay a commission, unnecessarily exposing the majority to liability, sanction, as well as, reputational harm.

122.   The majority, as allowed by their original Operating Agreement, asked for DeShaw to step down as manager until their investigation could be completed.

123.   Ever since the majority has dissolved its partnership with DeShaw, it is unaware of how much money he has converted from the company and the majority with his illicit side-dealings operations.

124.   The majority has sustained damages as a proximate cause of DeShaw's breach.

### THIRD CAUSE OF ACTION

### (Unjust Enrichment)

125.   The foregoing allegations in the preceding paragraphs are repeated and incorporated as if fully set forth herein.

126.   DeShaw has unjustly retained the money of the majority against fundamental principles of justice or equity and good conscience.

127.     DeShaw has absconded with the files of clients that he should have rightfully turned over to the majority, and/or made available to the majority for copying and recording prior to absconding with them, but did not.

128.     DeShaw has also, upon information and belief, appropriated funds to himself that properly belong to the company and/or third parties whom the majority has a moral and/or legal obligation to compensate.

129.     DeShaw has also retained other monies and/or properties that he should be required to disgorge.

130.     DeShaw should be required to disgorge the benefits he has received by violating any and all of the agreements he had with the majority, and/or violating any and all ethical obligations, and laws, in dealing with the majority and/or other third parties to whom the majority has an obligation.

## FIFTH CAUSE OF ACTION

### (Injunctive Relief)

131.     The foregoing allegations in the preceding paragraphs are repeated and incorporated as if fully set forth herein.

132.     DeShaw must cease operation of IMT to any extent he continues it, and conducting any and all transactions with clients for which he is neither qualified, licensed, nor approved.

133.     DeShaw must disburse the funds he has illicitly gained from company accounts, including but not limited to rents paid by tenants.

134.   DeShaw must pay the majority their share of the profits from clients.DeShaw must do an accounting of any and all monies that he has collected and/or disbursed independent of the majority, and/or without their knowledge and/or approval.

135.   DeShaw must make proper distributions to the clients, including but not limited to landlords, as well as other third parties, such as real estate agents, to whom the company owes payments, but from whom DeShaw has unjustly withheld payments.

136.   DeShaw must immediately cease using the business name, IMT, Trust Realty, or any version thereof used by the company and/or the majority to the extent he continues, and he must reimburse the majority to the extent he has unlawfully or without authorization, in the past.

137.   DeShaw must stop defaming or putting into a false light the other members of IMT, and making threats of any kind to them, and/or holding himself out to be in association with them.

## FIFTH CAUSE OF ACTION

### (Declaratory Relief)

138.   The foregoing allegations in the preceding paragraphs are repeated and incorporated as if fully set forth herein.

139.   The plaintiffs are not bound by an agreement that they did not intend to sign, which was deceptively substituted for the one that they did sign.

140.   The court should find that the second, substituted Operating Agreement is invalid.

141.   Indeed, inasmuch as the defendant presented the first Operating Agreement to the members for signature, with the clandestine purpose of substituting a second

agreement using the majority's signatures from the back page of the first Operating Agreement, it is apparent that there was no "meeting of the minds" in executing that agreement.

142.     Moreover, in light of these circumstances, the first Operating Agreement is also inoperative.

**WHEREFORE**, Plaintiffs pray judgment against defendant, as follows:

1.  For a jury trial, if necessary, upon all issues;

2.  For compensatory damages;

3.  For punitive damages;

4.  For declaratory and injunctive relief;

5.  For costs of suit incurred;

6.  For prejudgment and post-judgment interest as provided by law.

7.  For such other and further relief as the court may deem proper.

    Dated this 8th day of January, 2015.

                                            /s/ Telia U. Williams

                                    Telia U. Williams, Esq.
                                    LAW OFFICE OF TELIA U. WILLIAMS
                                    10161 Park Run Drive, Suite 150
                                    Las Vegas, NV 89145
                                    Tel.: (702) 835-6866